William H. KELLEY, Petitioner,

v.

Harry SINGLETARY, Respondent.

No. 92–14246–CIVROETTGER.

United States District Court,
S.D. Florida.

Dec. 30, 2002.

Larry L. Luttjohann, Topeka, KS, for Plaintiff.

Evelyn Z. Wilson, Thomas E. Wright, Kevin James Grauberger, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Topeka, KS, for Defendant.

### *ORDER*

ROETTGER, District Judge.

THIS CAUSE is before the Court upon Respondent's Motion to Alter or Amend Judgment, pursuant to Fed.R.Civ.P. 59(e). Respondent asks the Court to alter or amend its September 19, 2002, Order and to address the allegations in claim 2 and claim 3 of Petitioner's petition for writ of habeas corpus. Petitioner is William H. Kelley (Kelley), and Respondent is Harry Singletary, Secretary of the Department of Corrections for the State of Florida (State). On August 31, 2000, this Court denied claims 4, 5, and 6 of Kelley's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On September 19, 2002, this Court granted Kelley's petition for habeas corpus due to the State's failure to disclose materially exculpatory evidence (claim 1).

### Rule 59(e)

Rule 59(e) of the Federal Rules of Civil Procedure states that "[a]ny motion to alter or amend a judgment shall be filed no later that 10 days after entry of judgment." Respondent's motion was timely filed.

■■■ Though the rule fails to set forth any specific standard to justify reconsideration of a judgment, four basic grounds warrant the granting of a Rule 59(e) motion: (1) "to correct manifest errors of law or fact upon which the judgment is based"; (2) "newly available or previously unavailable evidence"; (3) to "prevent manifest unjustice"; and (4) "an intervening change in controlling law." 11 Wright, Miller, & Kane, *Federal Practice and Procedure* § 2810.1 (2d ed.1995); *see also Cheney v. Cyberguard Corp.,* 2001 WL 1916564 (S.D.Fla.2001). The rule is not to be used to relitigate old matters, and a reconsideration of a previous order is an extraordinary remedy to be employed sparingly. *Id.; see also Barnett Bank v. FDIC,* 883 F.Supp. 707, 710 (S.D.Fla.1995) (Rule 59(e) motion must be denied absent presentation of newly discovered evidence). Only a change in the law or the facts upon which a decision is based will justify a reconsideration of a previous order. *Sussman v. Salem, Saxon, & Nielsen, P.A.,* 153 F.R.D. 689, 694 (M.D.Fla.1994).

## Discussion

The State asserts that the Court "erroneously disregard[ed] testimony from Kelley's trial" in granting Kelley's petition for habeas corpus. Additionally, the State argues that the jury "was aware of much of the information" which the State withheld from Kelley.

■ Upon further examination, the Court rejects the State's arguments. On pages 13–23 of its September 19, 2002, Order (September Order), the Court details several instances where exculpatory evidence was withheld from Kelley. The State has failed to provide the Court with new facts as to why its September Order is erroneous, and the Court stands by its previous judgment. *Id.* ("Only a change in the law, or the facts upon which a decision is based, will justify a reconsideration of a previous order"). Therefore, the State's motion to alter or amend the granting of Kelley's petition for habeas corpus pursuant to § 2254 is **Denied.**

■ The State, however, further alleges that the Court must settle all claims in a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Indeed, the Eleventh Circuit instructs that all claims for relief must be resolved regardless of whether habeas relief is granted or denied. *Clisby v. Jones,* 960 F.2d 925, 936 (11th Cir.1992). The purpose of such a rule is to avoid "piecemeal litigation" which threatens to undermine judicial economy, and treatment of several alleged constitutional violations in a single proceeding "enhanc[es] the quality of the judicial product". *Id.* (quotation and citation omitted). Failure to abide by the *Clisby* rule could result in the September Order being vacated without prejudice by the Eleventh Circuit and the case being remanded for consideration of the remaining claims. *Id.* at 938.

## Claims 2 & 3

In claim 2, Kelley alleges egregious ineffective assistance of trial counsel and "gross dereliction of counsel's most basic and essential" duties to petitioner. The following instances are cited as examples of trial counsel's ineffective representation: (1) the unreasonable failure to investigate and to present evidence on behalf of Kelley; (2) the failure to take pretrial depositions and to seek a more fair trial venue; (3) the failure to impeach, confront, and rebut the state's case; (4) the failure to make an effective closing argument and to object to improper closing argument by the state; and (5) the failure to provide reasonably effective assistance with regard to the submission of proposed jury instructions.

■ To succeed on a claim for ineffective assistance, petitioner must show that " 'counsel's representation fell below an objective standard of reasonableness' " and that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Chandler v. United States,* 218 F.3d 1305, 1312–13 (11th Cir.2000)(quoting *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The standard for counsel's performance is " 'reasonableness under prevailing professional norms.' " *Chandler,* 218 F.3d at 1313. A lawyer's performance at trial will not be graded by the reviewing court, but the court will ensure that the trial lawyer represented his client in a manner in which he is "constitutionally

compelled." *Id.* (quoting *Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)).

Kelley must demonstrate, by a preponderance of evidence, ineffective assistance of counsel. *Chandler,* 218 F.3d at 1313. This is a challenging standard, as "[j]udicial scrutiny of counsel's performance must be highly deferential," and the court will not second guess a lawyer's performance. *Strickland,* 104 S.Ct. at 2065; *see also Chandler,* 218 F.3d at 1314. Stated differently, Kelley's "burden of persuasion-though the presumption is not insurmountable-is a heavy one." *Id.* Whether a particular decision by counsel was a tactical one is a questions of fact, and the state court's resolution of the issue enjoys a strong presumption of correctness. *Holsomback v. White,* 133 F.3d 1382, 1386 (11th Cir.1998). Deciphering whether a tactical decision was a reasonable decision is a question of law, reviewable *de novo. Id.* at 1387.

■ Applying the first prong of the *Strickland* standard, deficient attorney performance, to the issue of pretrial investigation, Kelley argues that trial counsels' reliance on disbarred attorney Harvey Brower prevented pretrial investigation and trial preparation. A failure to investigate does not necessarily equate to deficient performance, as an attorney has "no absolute duty... to investigate particular facts or a certain line of defense." *Id.* at 1318; *see also Housel v. Head,* 238 F.3d 1289, 1294–95 (11th Cir.2001) ("a failure to investigate is not a unique category of counsel omission that automatically satisfies Strickland's deficient-performance prong."). This Court must determine if the lack of pretrial investigation and pretrial preparation fall "outside the wide range of professionally competent assistance." *Strickland,* 104 S.Ct. at 2066.

Defense counsel delegated responsibility for all pretrial motions, investigations, and witness interviews to Harvey Brower. Brower ultimately failed to provide trial counsel with a pretrial investigation report. Worse yet, he provided trial counsel with phony witness lists and non-existent addresses. (Joint Pretrial Stipulation of Facts ¶¶ 56–57). The State does not dispute Brower's shortcomings. (Respondent's Closing Memorandum p. 50).

It is surprising that trial counsel relinquished these duties to Brower since Brower's legal career garnered several blemishes in the decade prior to Kelley's trial. Brower was disbarred from the practice of law in Massachusetts in August, 1979, for defrauding one of his clients. *In re: Harvey Brower,* No. 79–14BD (Mass. Aug. 16, 1979). Earlier in his Massachusetts legal career, Brower was censured by its Supreme Judicial Court for fraudulent conduct in negligence cases. *In re Harvey Brower,* No. 29871 Law (Mass. Feb. 23, 1973). Brower also was convicted in the Western District of Louisiana for unlawfully conspiring to aid and abet the crime of bail jumping. *United States v. Marino,* 617 F.2d 76, 78 (5th Cir.1980).[1] In the present case, Kelley's trial attorney William Kunstler characterized Brower as a thief who "absconded" with fees without ever performing his investigatory duties. Two esteemed Massachusetts-based criminal defense lawyers testified that Brower was incapable of even performing a competent pretrial investigation for a capital murder trial. A retired attorney at the Boston hearing in this case testified that Brower had been secretly running a bookmaking operation out of the

---

1. Apparently, Brower's Lawrence, Massachusets office was also involved in a counterfeit bond sale conspiracy, disclosed during Brow-

er's bail jumping trial. *Marino,* 617 F.2d at 81.

attorney witness' office. Further, this attorney testified that Brower had more interest playing in two musical bands than in any kind of legal investigation.

Given Brower's tarnished history of questionable legal strategy, it is doubtful that Brower was sufficiently adept to satisfy the following requirement under *Strickland:* "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary. [A] decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 104 S.Ct. at 2066, 466 U.S. 668.

■ Applying the *Strickland* guidelines of investigation to Kelley, two facts are apparent. First, counsel did not perform reasonable investigation because the agent charged with this responsibility, Brower, proved to be inadequate. This Court has difficulty recognizing the competence of a ·pretrial investigator who "engaged in dishonesty, deceit and fraudulent" behavior representing one of his former clients, according to the Massachusetts Board of Bar Overseers. *In re: Harvey Brower,* No. 79–14BD (Mass. Aug. 16, 1979). Second, Kunstler and Edmonds could not have decided not to investigate because they were unaware of Brower's pretrial investigation (or lack thereof) until the eve of trial. At the Florida 3.85 hearing, Kunstler testified that he agreed to represent Kelley with the understanding that he would be unavailable to participate in any of the pretrial work. Kunstler stated that he was unprepared for the Kelley trial.

Based on Kunstler's own testimony, the lack of pretrial investigation was not due to "a decision... [made] for reasonableness in all the circumstances." *Strickland,* 104 S.Ct. at 2066. Rather, neither Kunstler nor Edmund made the decision not to investigate. They mistakenly assumed that Brower, the disbarred attorney/investigator, would conduct his investigation in a conscientious manner. Ultimately, however, Brower failed to perform an investigation, and his failure to present the findings of a pretrial investigation or to file any pretrial motions effectively provided Kelley with ineffective counsel. Therefore, Kelley's trial counsel was deficient in having a disbarred attorney, lazy to a fault, resolve whether or not to conduct a pretrial investigation.

Though courts are required to lend a "heavy measure of deference to counsel's judgments," the Supreme Court has found that a "total failure to conduct pre-trial discovery" rendered trial counsel's performance deficient. *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 2589, 91 L.Ed.2d 305 (1986). In *Kimmelman,* the court determined that trial counsel's failure to file a timely suppression of evidence motion constituted deficient attorney performance. Trial counsel conducted no pretrial discovery, and the decision to conduct no pretrial discovery was based not on "'strategy'" but on mistaken belief that the state was required to turn over all inculpatory evidence. *Id.* at 2588. Similarly, trial counsel in the present case acted under the mistaken belief that Brower would perform a dutiful investigation or decide not to investigate after thoughtful consideration.

### Claim 3

Petitioner claims that State's destruction of physical evidence prior to Kelley's two trials deprived him of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments. In 1976, the Florida State Attorney prosecuting John Sweet received a court order authorizing the destruction of physical evidence from the Von Maxcy murder. (Joint Pretrial Stipulation of Facts ¶ 93). At that point in time, the

state had insufficient evidence to proceed against Kelley. (*Id.* at ¶¶ 94–95).

 In order to establish a violation of due process, Kelley must demonstrate "bad faith on the part of the police." *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988); *see also United States v. Brown,* 9 F.3d 907, 910 (11th Cir.1993). In the present case, Kelley offers the affidavit of a former deputy with the Highlands County Sheriff's Office, Fred Michell, to demonstrate that the potentially exculpatory evidence was unnecessarily destroyed. Michell was the custodian of evidence in 1976 when a "very small amount" of evidence was destroyed by the court clerk due to a lack of space in the clerk's office. Michell testifies that the sheriff's office could have accommodated the clerk's office lack of space. Additionally, Highland County built a courthouse annex in 1974, and the second floor of this annex may have been vacant from 1974–1982. Michell raises the inference that the vacant annex space could have provided the extra space for evidence required by the sheriff's office.

Michell's affidavit furnishes possibilities about what the Highland County Sheriff's Office could have done to find extra space for evidence storage, but it does nothing to furnish insight into the requisite "bad faith" necessary to establish a due process violation. *Arizona,* 109 S.Ct. at 337. Michell's affidavit provides little more than speculation and "what could have been done" in order to preserve the physical evidence. Kelley fails to establish any animus on the part of law enforcement in their destruction of the evidence. Therefore, Kelley's Petition for Writ of Habeas Corpus as to Claim 3, destruction of evidence, is **DENIED.**

For the reasons set forth above, the State's motion to alter or amend the granting of Kelley's petition for habeas corpus pursuant to § 2254 is **DENIED.** Upon consideration of the petition, the evidentiary hearing, the record, and because Kelley received ineffective assistance of counsel due to trial counsel's complete lack of a pretrial investigation strategy, it is

**ORDERED AND ADJUDGED** that the petition for habeas corpus pursuant to 28 U.S.C. § 2254 is **GRANTED**, with respect to claim 2 (in addition to this Court's previously granting claim 1) and **DENIED** with respect to claim 3.